THE CITY OF SPRINGFIELD

*v.*

EMILY GREEN *et al.*

*Filed at Springfield March 23, 1887.*

1. SPECIAL TAXATION *for local improvements—according to frontage—constitutionality.* An ordinance requiring the cost of improving a street or sidewalk to be levied by special taxation upon real estate abutting thereon, in proportion to the frontage of the several lots, under the present constitution is valid.

2. SAME—*as to corner lots—considered as abutting on the several streets by which bounded.* It can not be said, as matter of law, that an ordinance requiring lot owners to pay for the improvement of the street or streets by which their lots are bounded, is so oppressive and unjust to the owners of corner lots as to justify the courts in declaring the same void.

3. An ordinance of a city for the paving of certain streets, directed that the special tax to defray the cost thereof should be "levied, assessed and collected upon and from the real estate, lots, parts of lots and tracts of land

abutting upon the line of said streets so ordered to be paved, in proportion to the frontage thereof upon the streets, or parts of streets, and alleys, ordered to be paved:" *Held,* that a lot, the side of which was bounded by a street so ordered to be paved, was to be regarded as abutting upon the same, as well as one the end of which was so bounded.

4. SAME—*as to adjoining lot not abutting on the street.* Commissioners appointed to assess the cost of improving a street upon the lots abutting on the same, are not authorized to extend their assessment of such a lot upon an adjoining lot of the same owner which is not bounded by the street. Such party's assessment should be confined to his lot which borders upon the street to be improved.

5. SAME—*ascertainment of benefits—not applicable in cases of special taxation.* Where a local improvement is sought to be made by a special assessment, the owners of the property assessed have the right to have the question of benefits passed upon by a jury; but no such right is given in a case of special taxation of contiguous property.

6. SAME—*whether ordinance embraces more than one improvement.* An ordinance for the paving of several streets and alleys, and parts of streets, with the same materials and in the same way, is not obnoxious to the objection that it embraces more than one improvement, even though there may be a difference of a few feet in the width of some of the streets, and the cost of paving certain railway tracks is excluded.

APPEAL from the County Court of Sangamon county; the Hon. J. H. MATHENY, Judge, presiding.

Mr. J. M. GROUT, and Messrs. GREENE, BURNETT & HUMPHREY, for the appellant:

It is first objected, that the ordinance is void, because the burdens are not equally distributed, and the question of benefits ignored. This raises the question of the difference between a special assessment and special taxation, decided in the following cases: *Craw* v. *Tolono,* 96 Ill. 255; *White* v. *People,* 94 id. 604; *Enos* v. *Springfield,* 113 id. 65; *Fagan* v. *Chicago,* 84 id. 231; *Galesburg* v. *Searles,* 114 id. 217; *Watson* v. *Chicago,* 115 id. 78; *Bigelow* v. *Chicago,* 90 id. 53.

It is objected that the ordinance embraces more than one improvement. The paving of the street is but a single improvement. *Ricketts* v. *Hyde Park,* 85 Ill. 110; *People* v. *Sherman,* 83 id. 167; *Prout* v. *People,* id. 155; *Watson* v. *Chicago,*

115 id. 78; *Parker* v. *Challis,* 9 Kan. 155; *Challis* v. *Parker,* 11 id. 394.

The third objection, which we desire to notice, is, that the assessment is void, because certain of these lots, which are corner lots, do not abut or front upon the streets for the improvement of which a special tax is assessed against them. That this objection is untenable, see *Morrison* v. *Hershire,* 32 Iowa, 271; *Des Moines* v. *Dorr,* 31 id. 39; *City of Lawrence* v. *Killam,* 11 Kan. 499.

The Iowa court has gone to the extent of holding, that under an ordinance for paving the streets lying along the side and end of a lot, by frontage, one-fourth of the intersection may be charged against the corner lot. *Wolf* v. *Keokuk,* 48 Iowa, 129. See, also, 2 Desty on Taxation, 1247.

Messrs. ALLEN, BROWN & BROWN, and Mr. C. A. KEYES, for the appellees:

While the city may proceed by special assessment or by special taxation, yet the power must be strictly pursued. *Webster* v. *People,* 98 Ill. 343.

If special taxation be adopted, no lot can be taxed more than the cost of the improvement in front thereof. A special tax can not be levied upon the property of one locality to pay the cost of an improvement made along or in front of property situate in another locality.

A corner lot has no more feet front than any other lot of equal size. The term "abutting" is used in reference to that which touches a lot at the end. 1 Bouvier's Law Dictionary, "Abuttal."

Mr. L. H. BRADLEY, also for the appellees.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

In February, 1886, the city of Springfield adopted an ordinance providing for the pavement of a large number of its streets and alleys, particularly specifying the materials to

be used, and the manner in which the work was to be done. The ordinance directed the expenses of paving the intersections of the streets and alleys to be paid by general taxation, and that the cost of paving such portions of them as were occupied by railways should be defrayed by a special tax, to be levied upon the right of way of the owners of such railways. The balance of the expenses of the improvement was directed to be raised by a special tax, to be levied and assessed upon the lots and real estate abutting upon said streets and alleys. The assessment, as made by the commissioners appointed under the ordinance, was, on application to the county court of Sangamon county for that purpose, duly confirmed, except as to certain lots belonging to appellees. As to these lots, the court held some of the objections to the assessment well taken, and thereupon entered an order annulling the same and dismissing the proceeding, to reverse which the city has appealed to this court.

Able and elaborate arguments have been filed in the case, on behalf of appellees, which strike at the very foundation of the entire assessment. They review, with great force of reasoning, the claim or contention that an ordinance requiring the cost of improving a street or sidewalk to be assessed upon the real estate abutting thereon, in proportion to the frontage of the several parcels of such real estate, is obnoxious, if not to the letter, at least to the spirit, of the constitution, and consequently void. The following provisions of the constitution are referred to as sustaining the claim and contention in question: Sections 1, 2 and 19, of article 2, and sections 1, 2 and 6, of article 9.

That this objection would have been good under the constitution of 1848, is not denied. (*City of Chicago* v. *Larned*, 34 Ill. 203.) But that the reverse of this is now the rule, where the cost of the improvement is to be raised by special taxation, is conclusively shown by the following authorities: *White* v. *The People ex rel.* 94 Ill. 604; *Craw* v. *Tolono*, 96

id. 255; *Bigelow* v. *Chicago,* 90 id. 53; *Fagan* v. *Chicago,* 84 id. 234; *Enos* v. *Springfield,* 113 id. 65; *Galesburg* v. *Searles,* 114 id. 217; *Watson* v. *Chicago,* 115 id. 78; *City of Sterling* v. *Galt et al.* 117 id. 15. The change in the ruling upon this question is based, primarily, upon the difference between the present constitution and the constitution of 1848, and also, in part, upon the construction which has been placed upon our present statute relating to local improvements by municipal corporations. The construction in question recognizes a distinction between a special assessment and special taxation, in respect to the right of the owners of the property assessed to have the question of benefits passed upon by a jury. In the former case, such right is held to be given by the statute, while in the latter it is denied.

This whole matter is so fully discussed in the cases above cited, wherein will be found all the reasons for and against the rule as now held by this court, that it would be but a mere idle waste of time to go over the ground again, and we therefore decline to do so. If this were a new question, the writer, and, perhaps, other members of the court, would take the view of appellees upon this question. (*White* v. *The People ex rel. supra.*) But it is not. If it be possible to settle any question by repeated decisions all the same way, the present one surely ought to be regarded as finally and irrevocably settled.

The ordinance is also assailed on the ground that it embraces more than one improvement. We do not think this is true, in point of fact. While many streets and parts of streets are embraced in the scheme of improvement adopted by the city, yet we regard them all as but parts of the same improvement. The city authorities, in adopting the ordinance, must have found, as a matter of fact, that these streets and parts of streets were so similarly situated, with respect to the improvement proposed to be made, as to justify treating them as parts of a common enterprise and single improvement, and from the record before us we think they were jus-

tified in doing so. They were all to be paved with the same material and in the same way, and the fact that there was a difference of a few feet in the width of some of them, and that the cost of paving the railway tracks in others was to be excluded from the estimate, should, in our opinion, make no difference in this respect. The similarity of the improvement proposed to be made, and the situation of the property to be assessed, with respect to it, afford a more satisfactory test as to whether they might all be embraced in a common scheme as one improvement, than their actual connection or physical contact with one another. It is true, expressions are to be found in one or two cases looking in a contrary direction; but these expressions were made *in arguendo*, merely, and not for the purpose of laying down any rule on the subject. So far as the actual decisions of this court go, they support the contrary view, and are in perfect harmony with what is here said. *Prout* v. *The People*, 83 Ill. 155; *The People* v. *Sherman*, id. 167; *Ricketts* v. *Hyde Park*, 85 id. 110.

It is next objected that the lots whose sides, only, are bounded by the streets sought to be improved, do not, within the meaning of the ordinance, *abut* upon such streets. The ordinance directs that the tax in question shall be "levied, assessed and collected upon and from the real estate, lots and parts of lots, and tracts of land *abutting* upon the line of said streets so ordered to be paved, in proportion to the frontage thereof upon the streets, or parts of streets, and alleys ordered to be paved, as aforesaid." An examination of the plat of the city shows that the sides of all the lots involved in the present appeal are bounded by some one of the streets ordered to be paved, and the contention of appellees is, that a lot, the side of which only touches or is bounded by a street, can not, with any propriety of speech, be said to abut thereon— that the end of a lot only abuts, while the side adjoins. Doubtless, the highest degree of accuracy in the use of language would require the word to be used in the restricted sense con-

tended for; but that degree of accuracy, it is well known, is not generally attained, and is hardly to be expected, in the framing of statutes or city ordinances. If such strictness in the use of language were applied by the courts in construing ordinances, doubtless the purpose with which many of them are passed, would be defeated. Whenever the meaning of a word, as used in a statute or ordinance, becomes the subject of controversy in a legal proceeding, the ascertainment of its strict primary signification is not a matter of so much importance as it is to discover the sense in which it was used by the legislative body, for the latter must control, although the word has been used without proper regard to its appropriate and primary meaning. Now, while, strictly speaking, a lot whose end is bounded by a street is said to abut upon it, while one whose side is thus bounded is said to adjoin it, yet it is well known these words are often used in the same sense, and indiscriminately.

The question, then, is presented, in what sense did the city council use the word "abutting," as it occurs in the ordinance. The whole of the ordinance considered, we have no doubt that the word was intended to apply to lots whose sides as well as ends were bounded by the line of the streets to be improved, and that where the streets in front and at the side were both to be paved, it was the intention of the council that the corner lot should bear one-half of the expense of the improvement in front of the side as well as of the end of the lot. Any other construction of the ordinance would leave no provision whatever for paying for the pavement of those parts of the streets directed to be improved, which lie in front of the sides of lots located on the line of said streets. We are not prepared to impute such an intention as that to the city council. That the construction we have given the ordinance in this respect fully accords with the legislative intent, we have no doubt whatever.

The question then resolves itself into this: Can we say, as matter of law, that an ordinance which requires lot owners to pay for the improvement of the street or streets by which their respective lots are bounded, is so oppressive and unjust to the owners of corner lots as to justify a court in declaring the ordinance void. The tax on the corner lots, in the present scheme, is, on an average, a fraction over three times as much as it is on the other lots; yet, after all, the difference in value and advantages between corner lots and those which are not, may, in a great degree, if not entirely, make up for the inequality in the tax. Doubtless, these matters were all taken into consideration by the city council in framing the ordinance, and, everything considered, we are unable to say the ordinance is so manifestly oppressive and unjust as to render it void.

The view we have taken on this question, being the only one which has given any serious trouble, is strongly supported, if not fully sustained, by the following authorities: *City of Lawrence* v. *Killman,* 11 Kan. 499; *City of Des Moines* v. *Dorr,* 31 Iowa, 89; *Morrison* v. *Heishire,* 32 id. 271.

It appears that the owners of some of the lots which were taxed only for the improvement of the street fronting on their sides, also owned the adjoining lot or lots, which the commissioners improperly assessed together with the front lot. While the amount to be paid by the owner was not at all increased by extending the assessment to the adjoining lots, yet there was no authority for doing so, as the lots lying back did not touch the street. On this objection being made to the assessment, the city, by its counsel, asked the court to have it so corrected as to limit the assessment to the front lot. The application was allowed in one case, but denied in the others. Section 33, article 9, chapter 24, in relation to cities and villages, provides: "The court before which any such proceeding may be pending, shall have authority, at any time before final judgment, to modify, alter, change, annul or con-

firm any assessment returned as aforesaid, or cause any such assessment to be recast by the same commissioners, whenever it shall be necessary for the attainment of justice," etc. We think, under this provision of the statute, all of the amendments should have been allowed.

The order of the county court, as respects appellees' lots, and from which this appeal is prosecuted, is reversed, and the cause is remanded, with directions to allow the amendments in question, and for further proceedings in conformity with the views here expressed.

*Order reversed.*